J-S77043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ASHLEY ROSE CURRY | : : | |
| Appellant | | No. 121 MDA 2017 |

Appeal from the Judgment of Sentence October 11, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0001038-2015

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:           **FILED DECEMBER 29, 2017**

Appellant Ashley Rose Curry appeals from the judgment of sentence entered by the Court of Common Pleas of Lancaster County after a jury convicted Appellant of Aggravated Assault, Ethnic Intimidation, and Simple Assault.  Appellant argues that the jury's verdict was against the weight of the evidence and contends that the trial court erred in denying her request for a new trial based on after-discovered evidence.  We affirm.

Appellant was charged with the aforementioned offenses after she shot Ms. Jamie Roland ("the victim") on the afternoon of February 3, 2015. Appellant proceeded to a jury trial, which was held on July 18-22, 2016.  Both the Commonwealth and the defense presented the testimony of numerous witnesses who observed the altercation in question.

_____

* Former Justice specially assigned to the Superior Court.

The Commonwealth first presented Ms. Alecia Glen-McCowin, who testified that on the afternoon of February 3, 2015, she was driving on Lancaster Avenue in Columbia, Pennsylvania, when she was forced to stop behind a vehicle driven by Appellant. Although Appellant had the green light and the right of way to turn, Appellant did not proceed even though there was no traffic coming from the opposite direction. Ms. Glen-McCowin chose to "toot the horn" of her vehicle to get Appellant's attention. N.T. Jury Trial (N.T.), July 18-22, 2016, at 278. Appellant looked back at Ms. Glen-McCowin in her rearview mirror and continued to hesitate.

After Appellant turned into the parking lot of Musser's Market, Ms. Glen-McCowin followed and parked near the Dollar Store. Appellant's boyfriend, Stephen Smith, exited Appellant's vehicle and told Ms. Glen-McCowin that it was rude of her to honk the horn. Ms. Glen-McCowin asserted that she approached the couple to explain why she honked her horn and to apologize if she had offended them. Appellant began repeatedly yelling "nigger" out her window to Ms. Glen-McCowin, who is African-American. *Id*. at 268, 278. Ms. Glen-McCowin accused Appellant of being on drugs and responded, "I don't have time for this." *Id*. at 268.

After Appellant exited her vehicle, Ms. Glen-McCowin claimed Appellant kicked her, spit at her, and spouted racial slurs. Appellant kicked Ms. Glen-McCowin so hard that she caused an open cut to begin bleeding through her pants. As Appellant continued to scream, the altercation got the attention of

bystanders, several of whom rushed to assist Ms. Glen-McCowin, including the victim. None of the bystanders knew Ms. Glen-McCowin before this encounter.

Thereafter, Ms. Glen-McCowin observed Appellant pull out a firearm. Although Ms. Glen-McCowin admitted that she did not "know where [Appellant] got the gun from," she indicated that when she saw the black gun, "[w]e all thought we was gonna get shot." N.T. at 284, 333-35. Ms. Glen-McCowin testified that Appellant shot the victim in the stomach when the victim was standing in front of Ms. Glen-McCowin. After the victim collapsed to the ground, Appellant got in her car and remained there until the police arrived. Ms. Glen-McCowin averred that no one verbally or physically threatened Appellant before the shooting and indicated that no one prevented her from leaving the parking lot.

The victim, who was survived the attack, testified that on the afternoon in question, she was about to enter Musser's Market with her sister, Crystal Manfred, when they saw Appellant kicking and spitting on a black woman, who was later identified as Ms. Glen-McCowin. The victim indicated that she and Ms. Manfred ran to the Ms. Glen-McCowin's aid while she was on the ground near Appellant's vehicle. The victim confirmed that Appellant was repeatedly yelling racial slurs at all of them; all three women (the victim, Ms. Glen-McCowin, and Ms. Manfred) are African-American.

Observing Appellant retrieve a firearm from her vehicle, the victim heard Appellant threaten to shoot Ms. Manfred. After "[a]drenaline kicked in," the victim "jumped and [Appellant] shot" her in the stomach. *Id*. at 366. The

victim denied chasing or running after Appellant and testified that Appellant could have walked or driven away during the entire encounter. As a result of the shooting, the victim sustained a shattered hip and a broken femur.

Ms. Manfred testified similarly, indicating that as she and the victim were about to enter Musser's Market on the day in question, they heard a commotion between an older African-American woman and a younger Caucasian woman, neither of whom she knew. Ms. Manfred indicated that she and the victim felt it necessary to settle the conflict down because the younger woman, confirmed to be Appellant, was screaming racial slurs at the African-American woman (Ms. Glen-McCowin), who "was so much older." *Id*. at 401-402. Ms. Manfred observed Appellant reach into her vehicle, pull out a gun, and shoot the victim. As Ms. Manfred's immediate concern was for the victim, who is her sister, she ran to the aid of the victim, who had collapsed behind Appellant's car. Ms. Manfred was worried about the victim's location as Appellant stated that she would "run her… black ass over." *Id*. at 407, 417. Ms. Manfred denied hitting, grabbing, or threatening Appellant in any way.

The prosecution also presented the testimony of Edward Hamilton Young, who was employed as the store manager of Musser's Market. Young was about to enter the market when he heard Appellant repeatedly screaming "fucking nigger" at a black woman in the store parking lot. *Id*. at 442-43. Young had not met either woman before this occasion. Young approached the women, thinking he would have to try to deescalate the situation as store manager. Even after Appellant spit in Ms. Glen-McCowin's face and kicked

- 4 -

her, Mr. Young observed that Ms. Glen-McCowin "was amazingly calm, trying to talk [Appellant] down a little bit." *Id*. at 445.

Mr. Young also saw two women "race[] past" him to "form a wall… and back[ Appellant] off, away from the original… black woman…to protect [her]." *Id*. He also observed Appellant, who was empty-handed, enter the driver's side of her vehicle and return with a gun. At that point, Mr. Young rushed to call authorities from the manager's office and when he returned, Appellant had shot the victim, and Ms. Manfred was hysterical on the ground.

Sergeant Samuel Stein of the Columbia Borough Police Department testified that after Appellant was arrested and transported to the station, Appellant was placed in a cell, where she attempted to commit suicide by removing her shirt and tying it around her neck and the bars of the call. When officers found Appellant unconscious, they took her to the hospital where she repeatedly became enraged and stated that "the bitch got what she deserved and that she had shot her." *Id*. at 504.

Defense counsel first presented the testimony of Ms. Judy Kulish and her husband, Mr. Donald Kulish, who had observed the incident from their home on Barber Street. Ms. Kulish admitted that she was too far away to hear what the parties were saying as the distance between her house and the parking lot is "about the length of a football field." *Id*. at 547. Mr. Kulish testified that he had observed the incident, but admitted that he "wasn't really paying attention…to what race [the people in question] were." *Id*. at 588,

605. Mr. Kulish thought that the Caucasian male he observed running from the scene of the shooting was the perpetrator.

The defense also presented the testimony of Sharon Lintner, who did not see the shooting occur nor hear the substance of the altercation. Smith, who is Appellant's boyfriend of thirteen years, claimed that he only heard "bits and pieces" of the argument in question due to noise from the vehicle's stereo playing and air vent blowing and the fact that Ms. Glen-McCowin spoke softly. N.T. at 633-37. He denied hearing Appellant use any racial slurs but indicated that Appellant grabbed her firearm after a group of people rushed at Appellant and threatened to hurt her. When the group continued to advance towards Appellant, Smith indicated that a shot was fired.

Appellant testified on her own behalf. She admitted to calling Ms. Glen-McCowin a "dirty nigger scumbag" and "filthy bitch," spitting her in the eye, and kicking her in the leg. *Id*. at 722, 724-25, 770-772, 734. However, Appellant asserted that Ms. Glen-McCowin initiated the altercation with the same behavior. Appellant characterized the victim and Ms. Manfred as "two extremely large women charging at me like wild animals coming fast." *Id*. at 730. Appellant asserted that she attempted to go back to her car but observed something resembling a weapon pointing at her inside Ms. Manfred's pocket. Thereafter, Appellant grabbed her firearm and took it out of the vehicle. She claims that the victim threatened to take the firearm away from her. Appellant contended that she shot the victim as she felt her life was in danger.

After the conclusion of the trial, the jury convicted Appellant of the aforementioned charges. On September 8, 2016, Appellant filed a request for a new trial based on after-discovered evidence that the victim allegedly worked as an informant for the Lancaster County Probation and Parole Department as well as the Pennsylvania Attorney General's Office. After holding an evidentiary hearing, the trial court denied this motion.

On October 11, 2016, the trial court imposed an aggregate sentence of six years and two months to sixteen years' imprisonment. On October 13, 2016, Appellant filed a post-sentence motion, which the trial court subsequently denied on December 14, 2016. This timely appeal followed. Appellant complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues for our review on appeal:

I. Did the trial court err in finding that the jury's verdict of guilty of aggravated assault was not against the weight of the evidence and was not so contrary thereto as to shock the conscience, where the testimony of the witnesses regarding the confrontations was so contradictory as to render any verdict based on this testimony unreliable?

II. Did the trial court err in refusing to grant a new trial based on the Commonwealth's **Brady** violation, when it failed to disclose to defense counsel that Commonwealth witness Jamie Roland [(the victim)] was an informant for Lancaster County Probation and Parole in January–February 2016, that she was a paid informant for the Pennsylvania Attorney General's Office in April–June 2016, and that a capias filed February 2, 2016, alleging that [the victim] had violated her probation, was dismissed, and [the victim's] probation was terminated, on June 29, 2016, shortly before the

- 7 -

> Commonwealth was expecting [the victim] to testify at trial against [Appellant]?

Appellant's Brief at 8.

When reviewing the trial court's denial of a challenge to the weight of the evidence, we are guided by the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Akhmedov*, ___A.3d___, 2017 PA Super 384 (Dec. 8, 2017) (quoting *Commonwealth v. Houser*, 610 Pa. 264, 18 A.3d 1128, 1135–36 (2011) (citations and internal quotation marks omitted)).

Although Appellant argues that the prosecution witnesses gave contradictory accounts of the shooting, she fails to show any material inconsistencies in their testimony. Based on our review of the record, we agree with the trial court's determination that there was ample evidence to support the jury's verdict. The jury weighed the evidence and determined that Appellant committed aggravated assault against the victim when multiple eyewitnesses asserted that Appellant (1) provoked the confrontation by spitting, kicking, and screaming racial slurs at Ms. Glen-McCowin, (2)

subsequently shot the unarmed victim, who sought to aid Ms. Glen-McCowin, and (3) was never physically or verbally threatened or prevented from leaving the parking lot. The jury was not persuaded by Appellant's attempt to argue she was justified in shooting the victim in self-defense.

While Appellant requests this Court accept her version of the evidence in question, the jury, sitting as factfinder, was free to believe all, part, or none of the evidence against Appellant. ***Akhmedov***, ***supra***. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. We discern no abuse of discretion in the trial court's determination that the verdict did not shock one's sense of justice. Accordingly, Appellant's first claim fails.

Second, Appellant contends the trial court erred in denying her motion for a new trial based on after-discovered evidence that the victim had acted as an informant for the Pennsylvania Attorney General's Office. Our review is guided by the following standard:

> To obtain a new trial based on after-discovered evidence, the defendant must prove, by a preponderance of the evidence, that the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

***Commonwealth v. Murray***, ___A.3d___, 2017 PA Super 363 (Nov. 15, 2017) (quoting ***Commonwealth v. Pagan***, 597 Pa. 69, 950 A.2d 270, 292 (2008); Pa.R.Crim.P. 720(c)).

More specifically, Appellant claimed that the prosecution was required to disclose the victim's status as an informant to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Our Supreme Court has explained that, pursuant to *Brady*:

> suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. This Court has held that to prove a *Brady* violation, the defendant has the burden of demonstrating that: (1) the prosecution has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 133 (Pa. 2012) (internal quotation marks and citations omitted).

Appellant argued that the victim's status as a government informant made her a biased witness in this case, pointing out that, shortly before the victim testified in this case, a capias alleging the victim had violated her probation was dismissed and the victim was released from probation. After Appellant filed her motion for a new trial based on after-discovered evidence, the parties stipulated to the following facts:

1. That Attorney Michael would testify in accordance with the information contained in [Appellant's] Exhibit 1 (Probation and Parole Services Report) and Exhibit 2 (Petition to Dismiss

- 10 -

Capias and Release from Non-Custodial Status and Order of Probation and Parole Services;

2. That [the victim] gave the Probation Office information;

3. That Attorney Michael did not know whether [the victim] was an informant for the Probation Office;

4. That [the prosecutor,] Attorney Larsen had no knowledge of the information contained in [Appellant's] Exhibit 1 and 2;

5. That Attorney Larsen had no knowledge of [the victim] being a confidential informant either through Probation or through the Columbia Borough Police Department, but that he would have known that she was on probation;

6. That Attorney Larsen believed that the Attorney General's Office is separate from the Lancaster District Attorney's Office;

7. That Attorney Larsen was not aware of the capias being filed against [the victim] or its dismissal;

8. That Attorney Larsen was not aware that [the victim] was a confidential informant;

9. That Detective Matthew Leddy of the Columbia Borough Police Department had no knowledge if [the victim] was working as a confidential informant for the Columbia Borough Police Department or the Attorney General's Office;

10. That Cindy Tascione, a Lancaster County Probation Officer, was supervising [the victim] in January 2016, at which time she received information from [the victim] regarding other individuals that were subsequently prosecuted in a separate matter;

11. That Ms. Tascione issued a capias against [the victim] on February 1, 2016, which is [Appellant's] Exhibit 2, inasmuch as [the victim] admitted to drug use;

12. That Ms. Tascione advised [the victim] that her probation would be terminated if she completed drug and alcohol counseling and treatment, which is consistent with the policy of the Probation and Parole Department of Lancaster County;

- 11 -

13. That, according to Ms. Tascione, [the victim] was not a confidential informant through the Probation and Parole Department of Lancaster County;

14. That, according to Ms. Tascione, the Lancaster County Probation and Parole Department does not have confidential informants;

15. That Ms. Tascione received a call from the Attorney General's Office inquiring as to whether anybody that she was supervising would be interested in being a confidential informant and she forwarded [the victim's] name to the agent;

16. That Ms. Tascione did not tell anyone in the Lancaster County District Attorney's Office, including Attorney Larsen, or the Columbia Borough Police Department, including Detective Leddy, that she gave [the victim's] name to the Attorney General's Office;

17. That in accordance with [Appellant's] Exhibit 2, on June 29, 2016, Ms. Tascione filed a petition to dismiss the capias and release [the victim] from non-custodial status pursuant to Lancaster County Probation and Parole policy due to the fact that [the victim] had successfully completed drug and alcohol counseling at the Coatesville Treatment Center;

18. That Ms. Tascione never made any promises to [the victim] throughout the entirety of her supervision;

19. That [the victim] was a paid informant for the Pennsylvania Attorney General's Office starting on April 5, 2016 until June 14, 2016 as set forth by Agent Lauren Diller, a detective employed with the Pennsylvania Attorney General's Office, as stated in [Appellant's] Exhibit 5;

20. That Agent Diller was not aware that [the victim] was a victim in a criminal court case or that she was going to testify for the Commonwealth;

21. That Agent Diller made no promises to [the victim] regarding anything and that she was not aware of any open charges against [the victim];

22. That the Attorney General's Office is a separate prosecuting agency from the Lancaster District Attorney's Office and Columbia Borough Police Department; and

23. That the Attorney General's Office was not prosecuting [the victim].

Trial Court Opinion, 2/7/17, at 12-16 (citations omitted).

As seen in the stipulations, Appellant concedes that the prosecutor (Attorney Larsen) and the investigator (Detective Leddy) had no actual knowledge that the victim (1) was an informant for the Attorney General's Office, which is a separate prosecuting agency from the Lancaster County District Attorney's Office, or that (2) the victim gave her probation officer information regarding other individuals that were subsequently prosecuted in a separate matter. Instead, Appellant argues that this knowledge should be imputed to the prosecution as he contends that such information was available to the Commonwealth.

We need not review this particular argument in more detail as we agree with the trial court's finding that Appellant failed to prove that the relevant information was helpful to Appellant. Although Appellant claims that evidence of the dismissal of the victim's probation gave her motive to testify favorably for the Commonwealth, this claim is contradicted by her own stipulation:

> Ms. Tascione advised [the victim] that her probation would be terminated if she completed drug and alcohol counseling and treatment, which is consistent with the policy of the Probation and Parole Department of Lancaster County;
>
> That in accordance with [Appellant's] Exhibit 2, on June 29, 2016, Ms. Tascione filed a petition to dismiss the capias and release [the victim] from non-custodial status pursuant to

- 13 -

> Lancaster County Probation and Parole policy due to the fact that [the victim] had successfully completed drug and alcohol counseling at the Coatesville Treatment Center;
>
> That Ms. Tascione never made any promises to [the victim] throughout the entirety of her supervision.

Trial Court Opinion, 2/7/17, at 12-16 (citations omitted).

Moreover, the trial court correctly found that the alleged suppression of the fact that Appellant was a confidential informant did not prejudice Appellant in light of the overwhelming evidence against her. Even assuming *arguendo* that the victim's testimony were disregarded, three other eyewitnesses testified consistently as to their account of Appellant's shooting of the victim and contradicting her claim of self-defense. In contrast, the witnesses for the defense admitted that they were either too far away to accurately hear or see the events, arrived after the shooting occurred, or misidentified the shooter as a white male.

We agree with the trial court's finding that Appellant failed to show that had the allegations regarding the victim's status as an informant been disclosed to the defense, that there is a reasonably probability that the result of the proceeding would have been different. Moreover, the trial court did not err in denying Appellant's motion for a new trial based on after-discovered evidence as she did not show that the admission of these allegations of the victim's bias would likely result in a different verdict.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/29/17</u>